**UNITED STATES DISTRICT COURT**
**SOUTHERN  DISTRICT OF NEW YORK**
------------------------------------------------------ X
                       :

**UNITED STATES OF AMERICA**      :        <u>**MEMORANDUM**</u>
                                 :    <u>**OPINION AND ORDER**</u>
         **- against -**          :
                                 :        **06 CR 1091 (SAS)**

**ANGEL MATEO DE LA CRUZ,**      :
      **a/k/a "Johnny LaClere de la Cruz,":**
      **a/k/a "Jose Pantoja,"**        :
      **a/k/a "Juan Ortega,"**        :
      **a/k/a "Cesar Sanchez,"**     :
      **a/k/a "Johnny LeClerc,"**    :
                                 :
                   **Defendant.**    :
------------------------------------------------------ X
**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        Defendant Angel Mateo de la Cruz ("Mateo")[1], proceeding pro se in

the instant motion, moves to dismiss the instant one-count indictment

("Indictment"), filed on November 27, 2006, charging him with illegally re-

entering the United States in violation of section 1326(a) of Title 8 of the United

States Code ("section 1326(a)").  Mateo seeks dismissal on four separate grounds,

claiming that: (1) the Indictment was not filed within the five-year statute of

---

       [1]     Following Mateo's indictment, the Government learned that "Mateo"
is the defendant's actual last name, and not "de la Cruz."  *See* Government's
Memorandum of Law in Response to Defendant's Pro Se Motion to Dismiss
("Reply Mem.") at 1.

1

limitations; (2) the Indictment was not filed within thirty days of Mateo's arrest; (3) the Indictment violates the Supreme Court's decision in *Apprendi v. New Jersey* and; (4) Mateo's 1994 deportation order was invalid because the earlier removal proceedings violated his due process rights. For the following reasons, defendant's motion is denied.

## II.   BACKGROUND

Mateo entered the United States in 1983 on a B-2 Visa, which is "issued to non-immigrant alien visitors for pleasure not to exceed three months."[2] Mateo remained in the United States after the expiration of the B-2 Visa without the authority of the United States Immigration and Naturalization Service ("INS").[3] On July 13, 1987, Mateo was convicted of attempted murder in the second degree in New York Supreme Court, Bronx County under the alias of "Cesar Sanchez," and was subsequently sentenced to a term of imprisonment of five to fifteen years.[4] On December 14, 1990, Mateo was released pursuant to a court-ordered discharge.[5] On July 10, 1992, Mateo was again convicted in New York State

---

[2]   *See* 7/27/07 Affidavit of Deportation Officer Kenneth Lopez ("Lopez Aff.") ¶ 5(a).

[3]   *See id.*

[4]   *See id.* ¶ 4(a).

[5]   *See id.*

Supreme Court, Bronx County, of robbery in the first degree, again under the alias of "Cesar Sanchez," resulting in a sentence of three to nine years.[6]

In July 1993, the INS learned through the New York State Prison Inmate Locater that Mateo was incarcerated at the Attica Correctional Facility ("Attica") under the alias "Cesar Sanchez."[7]  On June 10, 1994, the INS began deportation proceedings, issued a warrant for Mateo's arrest, and served him with an Order to Show Cause and Notice of Hearing ("OSC").[8]  The alleged basis for deportation included both the 1987 attempted murder conviction and the 1992 robbery conviction.[9]

On August 22, 1994, Mateo responded by letter to the OSC under the

---

[6]    *See id.* ¶ 4(b).  On June 17, 1994, Mateo was re-sentenced to two to six year's imprisonment.

[7]    *See id.* ¶ 5(b); Reply Mem. at 3.

[8]    *See* Lopez Aff. ¶ 5(c).  The documents were served on Mateo by certified mail, return receipt requested, to the superintendent of Attica.  *See* 6/10/94 Order to Show Cause and Notice of Hearing ("OSC"), Ex D. to Lopez Aff.  In his motion to dismiss, Mateo contends he never received the OSC.  *See* Motion to Dismiss Indictment ("Def. Mot.") at 2 ("The defendant herein, was never issued the relevant documents, notifying him of the deportation hearing in a timely manner, so that he can prepare his defense.").

[9]    *See* OSC.

alias of "Cesar Sanchez."[10]   In that letter, Mateo stated he would consent to

deportation.[11]   Subsequently, Mateo was transferred from Attica to Downstate

Correctional Facility for a deportation hearing, which was held on September 28,

1994.[12]   At that hearing, Mateo stated that he wanted to proceed without an

attorney.[13]   Thereafter, the Immigration Judge ("IJ") determined that Mateo was

deportable based on the charges described in the OSC.[14]   The IJ signed a Final

Order of Removal that day.   Mateo was informed of his right to appeal, which he

voluntarily and knowingly waived.[15]

---

[10]      *See* Lopez Aff. ¶ 5(g); 8/22/04 Letter from Cesar Sanchez to New York INS ("Aug. 22 Letter"), Ex. D. to Lopez Aff.

[11]      *See* Aug. 22 Letter.  The letter reads as follows:  "The purpose of this letter is to inform you that I have been granted Parole by the New York State Division of Parole.  I was paroled for 'Deportation Only.'  I am requesting that you expedite your procedures so that I may be deported on the release date mentioned in the enclosed notice (September 28, 1994).  If you have not filed a 'charging document' with the Office of Immigration Judge, would you please do so immediately!  If required, I will waive any appearance and leave this country voluntarily.  All I wish to do is expedite these proceedings so that they transpire as quickly as possible."  *Id.* (citation omitted).

[12]      *See* Lopez Aff. ¶ 5(h).

[13]      *See id.*; 9/28/94 Deportation Hearing in the Case of Johnny Laclere De La Cruz ("IJ Hearing"), Ex G. to Lopez Aff.

[14]      *See* Lopez Aff. ¶ 5(i).

[15]      *See id.*

On November 14, 1994, a Warrant of Deportation was issued pursuant to the Final Order.[16]  On December 5, 1994,  Mateo was deported to the Dominican Republic.[17]   In 1995, following his deportation, Mateo illegally re-entered the United States.[18]  On October 9, 2001 Mateo was arrested by the NYPD under the alias of "Jose Pantoja."[19]  On September 13, 2006, the NYPD notified the Immigration and Customs Enforcement's ("ICE") Law Enforcement Support Center ("LESC") that an internal database search indicated the possibility that Mateo, under the alias of "Jose Pantoja," was a previously deported alien.[20]  On September 14, 2006, pursuant to an ICE detainer, Mateo was transferred to ICE custody.[21]  The September 28, 1994 Final Order of Removal was then re-instated

---

[16]     *See id.*

[17]     *See id.* ¶ 5(k); Reply Mem. at 5.

[18]     *See* Lopez Aff. ¶ 6; Reply Mem. at 6.  To demonstrate his presence in the United States during this time, Mateo attaches to his motion a 1995 New York City marriage certificate as well as the 1996 and 1998 birth certificates of his two children issued by the New York City Department of Health.  *See* 8/13/95 Certificate of Marriage Registration, Ex. F to Def. Mot.; 4/2/96 and 3/24/98 Certificates of Birth Registration, Ex. E to Def. Mot.

[19]     *See* Lopez Aff. ¶ 6.

[20]     *See id.*

[21]     *See id.* ¶ 7.

while Mateo remained in ICE custody pending deportation.[22]  On September 19,

2006, Mateo signed a written *Miranda* warning and waiver form, and was

subsequently interviewed by ICE officials.[23]  During the interview, Mateo admitted

that previously he had been deported from the United States and that he had re-

entered the country without permission.[24]

On November 27, 2006, the Indictment was filed in one count:

charging Mateo, a native and citizen of the Dominican Republic, with illegally re-

entering the United States from on or around September 13, 2006, in violation of

section 1326(a).[25]  On December 5, 2006, Mateo was arrested, arraigned, and

placed in federal custody.[26]

## III.   LEGAL STANDARD

Indictments are governed by Federal Rule of Criminal Procedure 7(c),

which requires that an indictment contain a "plain, concise and definite written

---

[22]     *See id.*

[23]     *See id.* ¶ 8.

[24]     *See id.*

[25]     *See* Reply Mem. at 7.

[26]     *See* Lopez Aff. ¶ 10.

6

statement of the essential facts constituting the offense charged."[27]  "It is well
settled that 'an indictment is sufficient if it, first, contains the elements of the
offense charged and fairly informs a defendant of the charge against which he must
defend, and, second, enables him to plead an acquittal or conviction in bar of future
prosecutions for the same offense.'"[28]  In evaluating a motion to dismiss an
indictment under Rule 12, a court must treat the allegations in the indictment as
true.[29]

## IV.    APPLICABLE LAW

### A.    Statute of Limitations

Although there is no statutory limitations period for particular
offenses, "a 'catchall' statute operates" to supply a five-year statute of limitations
for noncapital offenses.[30]  That catchall statute, section 3282 of Title 18 of the
United States Code, provides, in pertinent part:  "Except as otherwise expressly
provided by law, no person shall be prosecuted, tried, or punished for any offense,

---

[27]    Fed. R. Crim. P. 7(c).

[28]    *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting
*Hamling v. United States*, 418 U.S. 87, 117 (1974)).

[29]    *See Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16
(1952); *United States v. Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999).

[30]    *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143,
157 (1987) (citing 18 U.S.C. § 3282).

not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."[31]        "Statutes of limitations in criminal cases normally begin to run when the crime is 'complete.'"[32] An offense committed under section 1326 is complete upon the occurrence of one of three events: the alien (i) enters; (ii) attempts to enter; or (iii) is "found in" the United States.[33]  The offense of being "found" in the United States "is not complete until the authorities both discover the illegal alien in the United States . . . and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence."[34]  The Court of Appeals for the Second Circuit has held that the "found in" provision targets instances where a deported alien enters this country  "'surreptitious[ly]'" or "'by means of specious documentation that conceals the illegality of his presence.'"[35]  The Second Circuit has also held that knowledge by state officials about a defendant's presence in the

---

[31]     18 U.S.C. § 3282(a).

[32]     *United States v. Mercedes*, 287 F.3d 47, 54 (2d Cir. 2002) (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970)).

[33]     8 U.S.C. § 1326(a)(2).

[34]     *United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir. 1995). *Accord Mercedes*, 287 F.3d at 54.

[35]     *United States v. Barnes*, 244 F.3d 331, 334 (2d Cir. 2001) (quoting *United States v. Acevedo*, 229 F.3d 350, 354 (2d Cir. 2000)).

United States cannot be imputed to the federal government.[36]

## B.    Timeliness Under the Speedy Trial Act

The Speedy Trial Act establishes time limits for the completion of various stages of a federal criminal prosecution.[37]  Under the statute, subject to certain exclusions of time, an indictment must be filed within thirty days after a defendant's arrest.[38]  Further, "it is well-settled that the statutory time limits imposed by the Speedy Trial Act begin to run after the federal arrest, and not after

---

[36]    *See Mercedes*, 287 F.3d at 55 (holding that the INS was not charged with knowledge of defendant's arrest by the state of New York given the false information defendant provided at his arrest); *Acevedo*, 229 F.3d at 355 (holding that defendant not "found" for purposes of limitation period until INS learned of his presence in this country despite arrest two years earlier by New York state authorities); *United States v. Calderon*, 85 F. Supp. 2d 319, 321 (S.D.N.Y. 2000) (holding that the mere fact that the defendant was fingerprinted at the time of his state arrest did not suggest that the federal government had "constructive knowledge of Defendant's prior deportation") *aff'd*, 243 F.3d 587 (2d Cir. 2001).

[37]    *See Smith v. LaClair*, No. 04 Civ. 4356, 2006 WL 734419, at *7 (S.D.N.Y. Mar. 14, 2006).

[38]    *See* 18 U.S.C. § 3161(b) ("Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.  If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.").

9

the preceding state arrest and indictment."[39]

### C.   Aggravated Felony Sentencing Enhancement

In *Apprendi v. New Jersey*, the Supreme Court stated that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[40]  The Court "carved out an exception applicable to violations of § 1326 by stating the *Apprendi* requirement is applicable to facts '[o]ther than the fact of a prior conviction . . . .'"[41]  Further, the court in *Almendarez-Torres v. United States* held that "§ 1326(b) does not set out a separate offense but rather is a penalty provision with respect to a violation of § 1326(a) and merely increases the authorized prison term for an unlawfully reentering alien based on his predeportation conviction for an aggravated felony."[42]

---

[39]   *United States v. Simmons*, 923 F.2d 934, 955 (2d Cir. 1991) (citing *United States v. Gomez*, 776 F.2d 542, 549-50 (5th Cir. 1985)).   *Accord United States v. Mejias*, 552 F.2d 435, 441 (2d Cir. 1997); *United States v. Lai Ming Tanu*, 589 F.2d 82, 88 (2d Cir. 1978).

[40]   *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

[41]   *United States v. Latorre-Benavides*, 241 F.3d 262, 264 (2d Cir. 2001) (quoting *Apprendi*, 530 U.S. at 490).

[42]   *Id.* (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998)).  Section 1326(b)(2) provides that the criminal penalty for removed aliens "whose removal was subsequent to a conviction for commission of an aggravated felony . . . shall be fined under such Title, imprisoned not more than 20 years, or

### D.    Collateral Attack on Prior Deportation Proceedings

An alien can collaterally attack an underlying deportation order in a subsequent criminal case for illegal re-entry if he satisfies three requirements.[43] The Supreme Court has held that "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review," but declined "to enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review."[44] Congress codified the holding in *Mendoza-Lopez* by amending the illegal re-entry statute as follows:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section *unless* the alien demonstrates that-
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; *and*

both."

---

[43]    *See* 8 U.S.C. § 1326(d).

[44]    *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 n.17 (1987).

11

(3) the entry of the order was fundamentally unfair.[45]

## V.    DISCUSSION[46]

### A.    Statute of Limitations

Mateo's prior arrest by state and local authorities, where he admittedly provided false information, did not provide constructive knowledge of his presence to federal immigration authorities.[47]   Further, Mateo was not "found" for purposes of the statute of limitations any time prior to September 13, 2006, when the INS was formally alerted to Mateo's presence in the country.  Thus, the November 27, 2006 Indictment was filed well within the statutory limitations period.

---

[45]    8 U.S.C. § 1326(d) (emphasis added).

[46]    This Court has the discretion to accept pro se submissions from a represented criminal defendant.  *See United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989); *United States v. Tracy*, 989 F.2d 1279, 1285 (1st Cir. 1993) ("A district court enjoys wide latitude in managing its docket . . . ."); *United States v. Cherry*, No. 94 CR 3131997, 1997 WL 543089, at *3 (S.D.N.Y. Sept. 3, 1997) (permitting defendant to supplement the filings of his attorney with his own pro se submissions).  Because I believe Mateo's motion will not cause confusion or a proliferation of submissions, his motion is accepted.  *See Bennett v. United States*, No. 03 Civ. 1852, 2004 WL 2711064, at *8 (S.D.N.Y. Nov. 23, 2004) (declining to accept pro se submissions from defendant to alleviate further improper filings, multiple submissions and the resulting confusion which occurred from previous submissions).

[47]    *See United States v. Bencomo-Castillo*, 176 F.3d 1300, 1304 (10th Cir. 1999) (rejecting claim that the INS had constructive knowledge of alien's presence in local prison, finding that the alien's use of an alias upon arrest makes status difficult to detect).

12

Nonetheless, the question as to when the federal authorities could have, with the exercise of reasonable diligence, discovered his presence in the United States still remains.  Yet, that question must await defendant's criminal trial on the instant Indictment, where the Government will bear the burden of proving every element of the offense beyond a reasonable doubt.

**B.      Speedy Trial Act**

Section 3161(b) is not applicable to Mateo's case.  The thirty-day period to serve an indictment runs from a *federal*, not *state*, arrest.  Thus, Mateo's October 9, 2001 arrest by the NYPD did not, as he suggests, trigger the Government's obligation under section 3161(b).  On the contrary, his December 5, 2006 arrest by federal authorities occurred after he was indicted, and was therefore timely.

**C.      Aggravated Felony Enhancement**

Mateo argues that the Indictment must be dismissed on the ground that section 1326(b)(2), which authorizes a maximum prison term of twenty years for a person whose deportation followed a conviction for an aggravated felony, sets out an offense that is different from the offense described in section 1326(a), which does not mention prior convictions and limits the term of imprisonment to two years.  This claim must be rejected in light of  controlling precedent in this Circuit.

In *United States v. Latorre-Benavides*, the Second Circuit held that section 1326(b)

does not create a separate offense, but that section 1326(b) is a "penalty provision

with respect to a violation of" section 1326(a).[48]  Thus, Mateo's claim that the

Indictment should be dismissed based upon an unconstitutional sentencing

enhancement is denied.

### D.  Collateral Attack on Prior Deportation Hearings

Mateo is foreclosed from now mounting a collateral attack on his prior

deportation proceeding.  Mateo fails to satisfy any of the prerequisites set forth in

section 1326(d) and *Mendoza-Lopez.*

Mateo seeks to be excused from failing to exhaust his administrative

remedies because he claims he received insufficient notice of the deportation

proceeding, rendering his waiver of appeal invalid.  However, Mateo's August 22,

1994 letter to the INS, sent one month after the INS forwarded the OSC to Attica,

is evidence that Mateo did, in fact, receive the requisite documents in a timely

manner.  Additionally, his waiver of appeal during the deportation proceeding

---

[48]     *Latorre-Benavides*, 241 F.3d at 264.

appears both knowing and intelligent.[49]  The IJ fully informed Mateo that he had the right to be represented by an attorney and the right to appeal his final deportation order, both of which Mateo declined.

Even if Mateo had exhausted his administrative remedies, he fails to demonstrate that he was denied judicial review.  Mateo's claim, in substance, asserts that because he inadvertently waived his right to appeal, he was denied the opportunity to raise a claim under section 212(c) of the Immigration and Nationality Act.[50]  "In order to qualify for Section 212(c) relief prior to 1996, an alien had the burden of proving, inter alia, that:  (1) he was lawfully admitted as a permanent resident of the United States; (2) he had an unrelinquished domicile of seven consecutive years; and (3) he had not committed an aggravated felony for which he had served a term of imprisonment of at least five years."[51]  Mateo was not a lawfully admitted permanent resident:  he admits that he remained in the

---

[49]    *See United States v. Sosa*, 387 F.3d 131, 136 (2d Cir. 2004) (holding that waiver of appeal is generally valid so long as it is both "knowing" and "intelligent").

[50]    *See United States v. Paredes-Batista*, 140 F.3d 367, 376 (2d Cir. 1998) (stating that due process is violated when an alien is "effectively deprived" of the right to direct appeal).

[51]    *Reynoso v. Ashcroft*, No. 01 Civ. 10840, 2002 WL 467576, at *4 (S.D.N.Y. Mar. 28, 2002) (citing  8 U.S.C. § 1182(c) (repealed 1996); *Domond v. INS*, 244 F.3d 81, 83 (2d Cir. 2001)).

United States illegally after his B-2 Visa expired.  Thus, Mateo was statutorily precluded from raising a claim under section 212(c).  Because the relief Mateo claims he was deprived of was not even available to him, Mateo fails to demonstrate that he was denied judicial review.

    Lastly, Mateo fails to establish that entry of the deportation order was fundamentally unfair.  To demonstrate that a deportation hearing was fundamentally unfair, Mateo must show:  (1) that there was a due process error in the proceedings (that the proceedings did not "'comport[] with the basic requirements of due process'")[52]; and (2) that he was prejudiced by the error.[53] Even if there were error in the proceeding,[54] Mateo has failed to demonstrate that he suffered any prejudice:  nothing in the record indicates that Mateo would have obtained relief from deportation even if he had appealed because he was not

---

[52] *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002) (quoting *Paredes-Batista*, 140 F.3d at 379).

[53] *See id.* at 158.

[54] Mateo does not specify which particular errors in the deportation proceeding caused him to suffer prejudice.  *See* Def. Mot.  Presumably, such errors consist of:  (1) failure to notify him of the hearing; and (2) inadvertent forfeiture of the right to appeal.  The first presumed error has been discussed above.  *See supra* at 14.

eligible for relief under section 212(c).[55]

## VI.   CONCLUSION

For the above reasons, defendant's motion to dismiss the Indictment is denied. The Clerk of the Court is directed to close this motion. A conference is scheduled for August 20, 2007 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 10, 2007

---

[55]      *See Paredes-Batista*, 140 F.3d at 378 ("To succeed in a collateral attack, [defendant] would have to show that he was prejudiced by the deprivation of his right of direct appeal — that is, he would have to show that 'a fully informed exercise of the right of direct appeal would have yielded [him] . . . relief from deportation.'" (quoting *United States v. Fares*, 978 F.2d 52, 57 (2d Cir. 1992))).

17

- Appearances -

**Defendant:**

Angel Mateo
# 59558-054
Metropolitan Correctional Center
150 Park Row
New York, NY 10007

**For the Defendant:**

Avraham C. Moskowitz, Esq.
Moskowitz & Book, LLP
1372 Broadway, 14th Floor
New York, NY 10017
(212) 221-7999

**For the Government:**

Sharon E. Frase
Assistant United States Attorney
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2329